[Civ. No. 13757. Third Dist. Dec. 27, 1973.]

JANE C. RUSSELL et al., Plaintiffs and Appellants, v.
ROBERT B. CARLESON, as Director, etc., et al.,
Defendants and Respondents.

## Counsel

Schwartz, Wayman & Malley, David P. Schwartz, Don B. Kates, Jr., David B. Bryson, Fred H. Altshuler, Richard A. Weinstock, Howard L. Welch, Burton Danziger, Emmal, Welch & Meader, Arthur L. Meader III, Robert Burkholder and Phil Isaacs for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, N. Eugene Hill and John Fourt, Deputy Attorneys General for Defendants and Respondents.

## Opinion

**JANES, J.**—Plaintiffs appeal from a judgment which denied them a writ of mandate and injunctive relief in their class action challenging the constitutionality of Welfare and Institutions Code section 11351.5, as implemented and enforced by defendants. The judgment declared the statute, and certain administrative regulations adopted under it, to be constitutional.

The cause was submitted for decision on the pleadings, declarations under penalty of perjury, documentary exhibits, and admissions made in response to written request. Although findings were neither made nor requested, the essential facts are undisputed.

## FACTS

Plaintiffs Russell, Munster, Rosell, and Taube are AFDC[1] recipient mothers each of whom is, or has been, living with an unrelated adult male (UAM).[2] Plaintiffs Pelley, Camarillo, and Briggs are UAMs who are, or have been, living with plaintiffs Russell, Munster, and Taube, respectively. Defendants are the state Department of Social Welfare (SDSW), the social welfare departments of the three counties which administer AFDC payments to plaintiff mothers, and the directors of those state and county departments.

Section 11351.5 of the Welfare and Institutions Code provides:

"Whenever an unrelated adult male resides with a family applying for or receiving aid under [the AFDC program], he shall be required to make a financial contribution to the family *which shall not be less than it would cost him to provide himself with an independent living arrangement.*

"The minimum financial contribution to the family shall be determined in accordance with standards established by the [SDSW] which takes [*sic*] into account such adult male person's income and expenses. The regulations formulated by the department shall require the mother of the children and the unrelated male to present all of the facts in connection with the sharing of expenses which comprise the agreement whereby said adult male resides with the family. The conditions of the agreement and the facts related to the sharing of the family expenses shall be signed under penalty of perjury by both the mother of the child and the unrelated male. In the event that either the mother or the adult male person willfully and knowingly fails to cooperate during the period such joint sharing of expenses arrangement exists in setting forth all of the facts in accordance with provisions of this section, aid to the family may be discontinued.

"The provisions of this section do not apply to a bona fide paying lodger, roomer or boarder living in the home of a family applying for or receiving aid under [AFDC]." (Italics added.)

The SDSW interprets the words "independent living arrangement" in

---

[1]AFDC (Aid to Families with Dependent Children) is funded by the federal and state governments pursuant to the Social Security Act. (42 U.S.C. § 601 et seq.; see *Rosado* v. *Wyman* (1970) 397 U.S. 397, 407-408 [25 L.Ed.2d 442, 453, 90 S.Ct. 1207]; *King* v. *Smith* (1968) 392 U.S. 309, 316-317 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) The AFDC program is implemented in California by the Welfare and Institutions Code (§ 11200 et seq.).

[2]An "unrelated adult male" is defined by applicable regulations of the state Department of Social Welfare as being "a male who is 21 or older and not related by blood or marriage to any member of the AFDC family." (Cal. SDSW Manual EAS § 43-114.21.)

section 11351.5 to mean that the UAM must contribute to the AFDC family what it would otherwise cost him to live alone without a sharing arrangement. A regulation adopted by the SDSW (EAS § 43-114.23) implements this construction and defines the cost of an "independent living arrangement" to be the sum of the AFDC allowances which a single adult male would receive for housing, utilities, food and household operations if he were on welfare.[3] A companion regulation (EAS § 44-113.5) provides that the AFDC family is considered to have received income to the extent that the UAM's contribution exceeds the sum of (1) the AFDC food allowance for an adult male, plus (2) $5 for the additional cost of utilities and household operations, plus (3) substantiated increased housing costs to the AFDC family caused by the presence of the UAM. Thus, where the UAM contributes the cost of an "independent living arrangement," the family's AFDC grant will be reduced by an amount equal to *part* of that contribution. (See Welf. & Inst. Code, § 11450.)

Other regulations of the SDSW specify procedures for the enforcement of section 11351.5. Wilful failure of the AFDC mother to present to the county welfare department a statement signed by her under penalty of perjury which sets forth the UAM's financial contributions to the family, as well as states his known income, will result in the denial or discontinuance of the AFDC grant. If the UAM himself refuses to sign such a statement under penalty of perjury, "information regarding such refusal shall, with the prior knowledge of the mother and the unrelated adult male, be sent to the district attorney." (Cal. SDSW Manual EAS §§ 43-113.33, 43-113.34.)

"When the known or probable income of the unrelated adult male is insufficient for him to support himself in an independent living arrangement and to meet his expenses of employment, or his financial contribution to the family is less than the cost of providing himself with an independent living arrangement," the county welfare department is authorized by the SDSW's regulations to advise the mother and the UAM that "continuation subjects them to prosecution for violating [Welfare and Institutions Code section] 11480."[4] In that event, the mother and the UAM must

---

[3]Plaintiffs' opening brief alleges that "[s]ince living cost figures vary from county to county, there is no uniform statewide figure" for the cost of an "independent living arrangement." Although some of defendants' exhibits suggest that plaintiffs' allegation is correct, there was insufficient evidence before the trial court for us to characterize the claimed variation either as established or undisputed. In any event, the alleged lack of uniformity in living cost is not an issue in this case.

[4]Section 11480 provides: "Any person other than a needy child, who willfully and knowingly receives or uses any part of an aid grant paid [under the AFDC program] for a

be notified that unless the UAM makes the required contribution or leaves the home, "the district attorney will have to be informed of the suspected misuse of the grant." If the situation has not been corrected within 30 days after such notice, "the county welfare department shall refer the situation to the district attorney in writing." (Cal. SDSW Manual EAS §§ 20-101.21, 20-101.22, 43-114.3.)

Plaintiffs Briggs and Taube are being prosecuted in San Diego County under section 11480 because Briggs lived with Taube but did not contribute the cost of an independent living arrangement for two months. Plaintiffs Pelley and Russell have continued to live together despite Pelley's non-payment of the required contribution, and their case has been referred to the Shasta County District Attorney for prosecution under section 11480. Plaintiffs Camarillo and Munster were instructed by the Ventura County welfare department that the matter would be referred to the district attorney for action pursuant to section 11480 if Camarillo continued living with Munster without contributing the statutory amount; unable to pay, Camarillo has left Munster's household but would rejoin her if he were able.[5]

## CONTENTIONS

### 1. *Construction of Section 11351.5*

■ Plaintiffs' opening brief suggests that Welfare and Institutions Code section 11351.5 "might conceivably have been read simply to require the unrelated man to pay his own way"—i.e., to "pay his own *share* of the household expenses." (Italics added.) Taking plaintiffs' suggestion as a challenge to the SDSW's construction of the statute, we dispose of it preliminarily.

Section 11351.5 requires the UAM residing with an AFDC family to contribute not less "than it would cost him to provide himself with an independent living arrangement." As previously mentioned, the SDSW's regulations construe the cost of an "independent living arrangement" to

---

purpose other than support of the needy children and the caretaker [e.g., mother] involved, is guilty of a misdemeanor."

[5]As to plaintiff Rosell, the director of the Ventura County Department of Social Welfare conceded in his answer that Rosell's situation had been erroneously treated as a UAM case. The complaint, however, alleged that Rosell was one of the "AFDC mothers who are now, or have been, living with a UAM"; the allegation was admitted in defendants' answers; and on this appeal no attack is made on Rosell's alleged standing as a class representative of "all other AFDC mothers who are now, or may in the future be, subjected to the [statutory and regulatory provisions at bench] because of cohabitation with an unrelated man (UAM)." (See *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807, 811 [74 Cal.Rptr. 358].)

be the cost to the UAM if he lived alone. "The contemporaneous administrative construction of a statute by those charged with its enforcement and interpretation, while not necessarily controlling, is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Cannon* v. *Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1].) It cannot be said that the SDSW's interpretation is "clearly erroneous or unauthorized"; indeed, we do not see what other construction the SDSW could properly have given to the statute. "The intent of the Legislature must be ascertained from the language of the enactment and where, as here, the language is clear, there can be no room for interpretation." (*Caminetti* v. *Pac. Mutal L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908].)

Moreover, the SDSW's regulation which equates the cost of an "independent living arrangement" with the sum of prescribed AFDC allowances for a single male (EAS § 43-114.23) is "consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose" (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 679 [94 Cal.Rptr. 279, 483 P.2d 1231]). Section 11351.5 expressly declares that "[t]he minimum financial contribution to the family shall be determined in accordance with standards established by the department which takes [*sic*] into account such adult male person's income and expenses." "[T]he courts recognize that the Legislature must be permitted to rely on the peculiar ability of an administrative agency to achieve continuous, flexible and expert regulation . . . ." (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 176 [70 Cal.Rptr. 407, 444 P.2d 79].)

As said under analogous circumstances in *Pitts* v. *Perluss* (1962) 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83]: "All of the parties to this litigation recognize the intricate and technical nature of the subject matter as well as the expertise and full technical knowledge which its administration requires. It would be presumptuous of a court to claim such skill; it will not, therefore, superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision." (P. 832.) Accordingly, "in determining whether the director has acted arbitrarily or capriciously, this court does not inquire whether, if it had power to draft the regulation, it would have adopted some method or formula other than that promulgated by the director." (P. 834.)

Plaintiffs mount no attack upon the SDSW's use of prescribed AFDC allowances in computing a uniform standard for UAM contributions; their challenge is to the underlying concept of the statutory "independent living arrangement" (§ 11351.5). The fulcrum of their constitutional arguments is

the inquiry posed in their closing brief—namely, "Why is the uniform standard calculated on the fiction that plaintiffs are living apart when in fact they are in a sharing arrangement?" We therefore turn to their contentions based upon due process and equal protection.

### 2. *Due Process and Equal Protection*

Plaintiffs contend that by "imposing a special obligation on the unrelated man to affirmatively support the welfare family," the UAM requirement expressed in section 11351.5 and its implementing regulations denies the UAM due process and equal protection of the laws as guaranteed by the federal and state constitutions. In particular, plaintiffs assert that the statute and regulations unconstitutionally discriminate against UAMs living with AFDC mothers while requiring no like contribution from adult relatives living with AFDC families, or from unrelated adult females living with male heads of AFDC households, or from UAMs living with non-AFDC mothers.

The contentions fail.

All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. (*In re Ricky H.* (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204].)

"[A]rticle I, section 13 of the California Constitution, which provides that no person shall be deprived of property without due process of law, has been held to be identical in scope and purpose with the due process clause of the federal Constitution. [Citations.]" (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 20 [94 Cal.Rptr. 904].) Although the California Constitution does not expressly speak in terms of "equal protection," it contains a number of provisions requiring the uniform operation of laws and prohibiting special legislation. (Cal. Const., art. I, §§ 11, 21, and art. IV, § 16.) These provisions of our state Constitution are substantially the equivalent of the equal protection clause of the Fourteenth Amendment, and evoke substantially the same standards as those prescribed by the federal Constitution. (*City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108, 120, fn. 8 [93 Cal.Rptr. 1, 480 P.2d 953]; *Dept. of Mental Hygiehe* v. *Kirchner* (1965) 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361]; *County of L. A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 388-389 [196 P.2d 773]; *Gray* v. *Whitmore, supra.*)

"Substantive due process . . . deals with protection from arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safe-

guards. In substantive law such deprivation is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation reasonably applied, i.e., the law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained." (*Gray* v. *Whitmore, supra,* 17 Cal.App.3d at p. 21.) "Accordingly, no valid objection to the constitutionality of a statute under the due process clause may be interposed 'if it is reasonably related to promoting the public health, safety, comfort, and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose.' [Citations.]" (*People* v. *Aguiar* (1968) 257 Cal.App.2d 597, 602 [65 Cal.Rptr. 171].)

Directing our attention to the constitutional guarantee of equal protection of the laws, we observe that the latter guarantee "compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) "[T]he Legislature is vested with wide discretion in making the classification and . . . its decision as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] . . . Only invidious discrimination offends the equal protection clause [citation]; the Legislature need not treat similar evils identically or legislate as to all phases of a field at once [citation]; legislative classification is permissible when it is based upon some distinction reasonably justifying differentiation in treatment [citations]; a classification is not void because it does not embrace within it every other class which might be included [citation] . . . ." (*People* v. *Aguiar, supra,* 257 Cal.App.2d at p. 604.) " 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' [Citation.]" (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 502, 90 S.Ct. 1153].) (See also *Allied Stores of Ohio* v. *Bowers* (1959) 358 U.S. 522, 527-528 [3 L.Ed.2d 480, 485-486, 79 S.Ct. 437]; *In re Ricky H., supra,* 2 Cal.3d at p. 522.)

Similarly, the California Supreme Court has declared: "The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].) "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."

(*Dandridge* v. *Williams, supra,* 397 U.S. at p. 485 [25 L.Ed.2d at p. 501].) "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." (*Id.* at pp. 486-487 [25 L.Ed.2d at p. 503].) "A legislature may address a problem 'one step at a time,' or even 'select one phase of one field and apply a remedy there, neglecting the others.' [Citation.] So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket. The very complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them." (*Jefferson* v. *Hackney* (1972) 406 U.S. 535, 546-547 [32 L.Ed.2d 285, 296, 92 S.Ct. 1724].)

■ Plaintiffs' claims based on due process and equal protection do not countervail the foregoing tests. Section 11351.5, as correctly interpreted by the SDSW, is (at the very least) "reasonably appropriate" to preventing encroachment on the AFDC grant, and, accordingly, is impervious to objection on the ground of due process. The Legislature could justifiably have determined that there were more spouseless AFDC mothers than AFDC fathers, and that a greater threat of diversion of the grant was therefore posed by cohabiting UAMs than by unrelated adult females or by adult relatives; hence plaintiffs' claimed denial of equal protection falls. The Legislature could properly have assigned a greater priority or urgency to UAM legislation than to comparable legislation in other areas. (Cf., *In re Ricky H., supra,* 2 Cal.3d at p. 522.)

■ The basic flaw in plaintiffs' constitutional argument is their characterization of the duty imposed on the UAM by section 11351.5 as being an obligation "to affirmatively support the welfare family." They attempt to bolster their characterization by citing *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], remanded (1965) 380 U.S. 194 [13 L.Ed.2d 753, 85 S.Ct. 871], subsequent opinion (1965) 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361], and *Lewis* v. *Martin* (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282]. The characterization and citations are inappropriate. Unlike the legislation in *Kirchner,*[6] the statute and regulations at bench do not require the UAM to pay for someone else's support. The UAM is called upon to pay only the equivalent of what it would cost him to live alone. And unlike the state provisions which conflicted with federal law in *Lewis*

[6]In *Kirchner,* the legislation which was struck down required designated relatives of a mentally ill person to contribute to his support in a state institution. (60 Cal.2d 716.)

v. *Martin,*[7] only the UAM's "actual" contribution is taken into account in computing AFDC payments. (Cal. SDSW Manual EAS § 44-113.5; Welf. & Inst. Code, § 11450.)

The fact that a portion of his actual contribution is considered income to the family, and reduces its grant, does not alter the concept that the UAM is paying only the cost of what would be his "independent living arrangement." *If he contributed merely his lesser share of household expenses, as plaintiffs advocate, he would in effect be using the AFDC grant because the grant is what made the sharing arrangement possible in the first place.* If the prescribed portion of the UAM's contribution was not treated as reducing the level of welfare need, and if the AFDC grant was therefore not diminished accordingly, the UAM's contribution would constitute to that extent an extra resource for the family and would run afoul of the requirement of the Social Security Act that state agencies administering AFDC plans "shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . . ." (42 U.S.C. § 602(a)(7); see also 45 C.F.R. § 233.20(a)(3)(ii)(a).)[8]

The SDSW's allocation to family income of the prescribed portion of the UAM's contribution is a reasonable reconciliation of the realities and federal requirements. As said in *Dandridge* v. *Williams, supra,* 397 U.S. at page 487 [25 L.Ed.2d at p. 503], "[T]he intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration [citation]. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

---

[7]In *Lewis* v. *Martin,* the federal high court invalidated the conclusive presumption of California law that, regardless of whether such income was actually available to or used by the child, the needs of an AFDC child were reduced by the amount of net income either of his nonadoptive stepfather or of an adult male person who had assumed the role of spouse to the mother although not legally married to her. (397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282].) (See *People* v. *Gilbert* (1969) 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580].)

[8]"States are not required to participate in the AFDC program, but once a state chooses to join it and take advantage of the substantial federal resources available, the state must comply with the mandatory requirements established by the Social Security Act, as interpreted and implemented by regulations promulgated by the United States Department of Health, Education and Welfare . . . . [Citations.]" (*Carleson* v. *Superior Court* (1972) 27 Cal.App.3d 1, 5 [103 Cal.Rptr. 824].)

### 3. *Prosecution Under Section 11480*

■    Plaintiffs challenge the validity of defendants' regulations and practices related to enforcement of the UAM contribution by threat of criminal prosecution under section 11480 (fn. 4, *supra*) and by referral to the district attorney for that purpose. The challenge is without merit.

Plaintiffs' opening brief states their argument in this regard thusly: "[Section] 11480 reaches only encroachment upon, or diversion of, the grant and nothing more. It does not apply to a man who, by paying his own *share* of the household expenses, *avoids partaking in the grant*. It does not enforce any affirmative support requirement . . . . [¶] . . . A fortiori defendants are prohibited from consistently misadvising and misinforming recipients as to the law and spuriously informing them that they are violating the law." (Italics added.)

In acting to protect the child beneficiaries of the AFDC support grants from the diversion of funds intended to provide their basic necessities, the Legislature has chosen two separate methods. One, expressed in section 11351.5, requires the UAM who resides with an AFDC family to contribute the cost of an independent living arrangement in order not to divert money from the purposes set out by Congress and the California Legislature. The other, expressed in section 11480, is criminal prosecution.

Plaintiffs' attack upon section 11480 is simply a restatement of the characterization of section 11351.5 advanced by them in a constitutional context, and rejected by us above. Section 11480, by its own terms, applies where the AFDC grant is being used for the support of an ineligible person. We have previously explained that the UAM who merely pays his share of AFDC household expenses is able to enjoy a sharing arrangement because the AFDC grant, from a financial viewpoint, is what makes the household available to him. He derives a monetary savings from the grant and, within the meaning of section 11480, is using it to the extent that his contribution is less than that required for an "independent living arrangement."

### 4. *Attorney's Fees*

Plaintiffs' first three causes of action were for class relief. The first cause of action alleged the invalidity of the UAM contribution requirements set forth in section 11351.5 and its implementing regulations. The second cause of action attacked defendants' regulations and practices concerning prosecution under section 11480. The third cause of action involved a practice peculiar to defendant Ventura County Department of Social Welfare which is not in issue on this appeal.

The fourth and final cause of action was in plaintiff Russell's name alone

and was of a hybrid nature: It incorporated previous allegations concerning her status as a class representative, the nature of the suit as a class action, defendants' resort to section 11480, and the claimed unconstitutionality of section 11351.5 and pertinent regulations. It also alleged (and the defendants concerned admitted) that Russell had raised the constitutional issues in an administrative hearing before the SDSW, where the SDSW's director had adopted a referee's decision affirming the validity of the regulations and approving the requirement of the Shasta County welfare department that plaintiff Pelley make the UAM contribution. (See Welf. & Inst. Code, §§ 10950-10961.) By the prayer of the fourth cause of action, Russell sought individual relief in administrative mandamus under Welfare and Institutions Code section 10962 (which incorporates section 1094.5 of the Code of Civil Procedure); she requested that the director's decision in the administrative hearing be set aside.

The judgment of the trial court granted partial relief under the third cause of action (the court enjoined the practice peculiar to Ventura County) and denied the remaining relief sought not only under that cause of action but also under the other three causes of action.

■ The trial court denied plaintiffs' request for statutory attorney's fees under the fourth cause of action (see Welf. & Inst. Code, § 10962) and for attorney's fees to be awarded on equitable grounds under the first three causes of action. Plaintiffs contend that such denial was error.

The court's rulings concerning attorney's fees are unassailable.

As to statutory attorney's fees under the fourth cause of action, section 10962 provides that "[t]he applicant or recipient shall be entitled to reasonable attorney's fees and costs, *if he obtains a decision in his favor*" upon judicial review by administrative mandamus. (Italics added.) Even assuming that plaintiff Russell's class allegations in the fourth cause of action did not take that cause of action outside the scope of section 10962 (see *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 690-691 [94 Cal.Rptr. 421, 484 P.2d 93]; *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807 [74 Cal.Rptr. 358]), statutory attorney's fees could not be awarded to Russell under that section (nor, as requested, to "plaintiffs") since Russell did not obtain a decision in her favor.

Plaintiffs' argument for attorney's fees on equitable grounds under the first three causes of action is equally unconvincing. As stated in the opening brief, "These theories, under which were sought recovery of attorney's fees against defendants Carleson and SDSW [and against the Ventura County defendants under the third cause of action], were: (1) That those defendants

adopted the challenged regulations, and defended them in this lawsuit, in bad faith and with full knowledge of their illegality; (2) That those defendants have benefited, and the public interest [has] been promoted, by this lawsuit; (3) That by eliminating the UAM rule this suit would have preserved a 'common fund' or 'common benefit' to the classes represented by plaintiffs."

Plaintiffs' first equitable theory fails if for no other reasons than that the challenged regulations were legal; there was no evidence of bad faith (even as to the practice peculiar to Ventura County which was enjoined); and there were no findings of bad faith.

Plaintiffs' opening brief makes clear that the second and third equitable theories advanced for fees are both statements of the "common fund" or "common benefit" doctrines. "It is the general rule that attorney's fees are not recoverable from the opposing party in the absence of an express statutory provision or a contractual agreement that they be paid." (*Reid* v. *Valley Restaurants, Inc.* (1957) 48 Cal.2d 606, 610 [311 P.2d 473]; see Code Civ. Proc., § 1021.) "An exception to the general rule is found, however, in the so-called common-fund doctrine, which is applicable in equity cases and recognized as such in California. As the Supreme Court has stated: 'It is a well-established doctrine of equity jurisprudence that where a common fund exists to which a number of persons are entitled and in their interest successful litigation is maintained for its preservation and protection, an allowance of counsel fees may properly be made from such fund . . . . [Citations.]' " (*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 320 [72 Cal.Rptr. 146].) "Under the 'substantial benefit' rule, a variant of the common-fund doctrine . . . , the successful plaintiff . . . may be awarded attorneys' fees . . . although the benefits were not 'pecuniary' and the action had not produced a fund from which they might be paid." (*Ibid.*)

Except in the one respect involving the third cause of action, plaintiffs were *unsuccessful* in this lawsuit. But litigation success is a necessary predicate to invocation of the "common fund" or "common benefit" doctrines. (See *Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748]; *Estate of Reade* (1948) 31 Cal.2d 669 [191 P.2d 745]; *Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, 277 [153 P.2d 714]; *Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313.)

Moreover, even in a case coming within the "common fund" or "common benefit" doctrines, the plaintiff is not entitled to recover attorney's fees under all circumstances. "[T]he allowance of attorneys' fees in such circumstances rests largely in the discretion of the trial court and an appellate court should

not reverse the denial of fees unless it clearly appears that the trial court abused its discretion . . . ." (*In re Trinity Tractor Co.* (1970) 3 Cal. App.3d 428, 445 [83 Cal.Rptr. 783]; see also *Bank of America* v. *West End etc. Co.* (1940) 37 Cal.App.2d 685, 697 [100 P.2d 318].) Quite apart from plaintiffs' near total lack of success in this case, they fail to show any abuse of discretion in the trial court's denial of attorney's fees.

The judgment is affirmed.

Richardson, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied January 24, 1974, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1974. Mosk, J., was of the opinion that the petition should be granted.