[Civ. No. 48930. First Dist., Div. Four. Oct. 1, 1980.]

NORTH COAST COALITION et al., Plaintiffs and Respondents, v. MARION J. WOODS, as Director, etc., et al., Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendants and Appellants.

Thomas B. Mason, Mary Ann Villwock, David Lowe, John E. McDermott, Mary S. Burdick, Alan Rader and Marilyn Katz for Plaintiffs and Respondents.

OPINION

CHRISTIAN, J.—The Department of Social Services and Marion J. Woods as its director appeal from an order granting a preliminary injunction which forbids enforcement of certain welfare regulations and requires appellants to provide the individual respondents and members of the represented class with benefit payments to which they would be entitled but for the operation of the regulations.

Respondents Diana Lotspeich, Stormie Harrington, Joyce Crouch and Katherine Kulmi receive public assistance under the aid to families with dependent children (AFDC) program, a cooperative federal-state program financed with federal and state funds. (42 U.S.C. § 601 et seq.; Welf. & Inst. Code, § 11200 et seq.; see *King* v. *Smith* (1968) 392 U.S. 309, 316-317 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) In June and July of 1979, each received notice from the Mendocino County Department of Public Services that her AFDC grant would be reduced due to receipt of income from an unrelated adult male (UAM) residing in her household. The department stated that this action was required by specified welfare regulations, including section 44-133 of the Eligibility and Assistance Standards (Manual of Policies and Procedures, State of California Health & Welfare Agency, Department of Benefit Payments [hereinafter EAS]).

If an unrelated adult male resides with a woman receiving an AFDC grant, he is required by Welfare and Institutions Code section 11351.5 to make a financial contribution to the AFDC family unit "which shall not be less than it would cost him to provide himself with an independent living arrangement."[1] The Eligibility and Assistance Standards require the AFDC mother to report the amount of financial payments made by the UAM for his own share of living expenses (EAS, § 43-107.51). Portions of these payments are treated as a contribution, i.e., income, to the AFDC family. The amount of this contribution is determined, as provided by EAS section 44.113.5, by reducing the amount of payments by the UAM for his own living expenses by (1) the AFDC food allowance for one person, (2) $5 for utilities and household operations, and (3) any increase in housing costs caused by the UAM's presence.[2] A subsection of the regulation cited by the Department of Social Services in its notice to the individual respondents that their AFDC grants would be reduced (EAS § 44-133.5) provides that the net amount remaining after this calculation, plus any additional contributions made by the UAM to the AFDC family, is treated as net income to the family.[3] The AFDC grant is reduced concomitantly. (EAS

---

[1]Welfare and Institutions Code section 11351.5 provides: "Whenever an unrelated adult male resides with a family applying for or receiving aid under this chapter, he shall be required to make a financial contribution to the family which shall not be less than it would cost him to provide himself with an independent living arrangement.

"The minimum financial contribution to the family shall be determined in accordance with standards established by the department which takes into account such adult male person's income and expenses. The regulations formulated by the department shall require the mother of the children and the unrelated male to present all of the facts in connection with the sharing of expenses which comprise the agreement whereby said adult male resides with the family. The conditions of the agreement and the facts related to the sharing of the family expenses shall be signed under penalty of perjury by both the mother of the child and the unrelated male. In the event that either the mother or the adult male person willfully and knowingly fails to cooperate during the period such joint sharing of expenses arrangement exists in setting forth all of the facts in accordance with provisions of this section, aid to the family may be discontinued.

"The provisions of this section do not apply to a bona fide paying lodger, roomer or boarder living in the home of a family applying for or receiving aid under this chapter."

[2]EAS section 44-113.5 provides: "*Unrelated Adult Male Living in the Home*

"Net income to the family budget unit from the actual contribution made by the unrelated adult male living in the home (see Section 43-114) to meet his own living expenses is the amount remaining after deducting the AFDC food allowance for an adult male plus $5 for the additional cost of utilities and household operations. A deduction is also allowed to the extent of the additional cost of housing to the family budget unit if the mother substantiates that such costs are increased by the presence of the unrelated adult male. The net income to the family from this source is a contribution and is not subject to the earnings exemption."

[3]EAS section 44-133.7 provides: "*Income From Contribution By Unrelated Adult*

§§ 44-101, 44-315.413.) The present litigation challenges the validity of EAS section 44-113.5 and EAS section 44-133.7, upon which the proposed reductions in the individual respondents' AFDC grants were based.

Appellants contend that after the trial court granted the preliminary injunction the Department of Social Services, in hearings requested by the four individual respondents, rendered decisions in favor of three of the four, so that those three have not been adversely affected by the challenged regulations. Appellants also argue that respondent North Coast Coalition has not alleged that it or any of its members is adversely affected by the regulations. The issue, however, is insignificant because, as appellants concede, one of the individual respondents, Joyce Crouch, remains affected by the regulations,. so that the present controversy is not moot. Even if the case were moot, it "poses an issue of broad public interest that is likely to recur" and would therefore be subject to review on this appeal despite its mootness. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)

Respondents contend that it is inappropriate for this court to determine the merits of their claim that the challenged regulations are invalid. They argue that appellate review of the order granting the preliminary injunction is limited to a determination whether the trial court abused its discretion when it determined the probability that respondents would prevail on the merits of the action. Appellants contend that this court may determine the validity of the challenged actions on this appeal because the case presents solely a question of law.

Several courts have held that an appellate court cannot determine the merits of an action on appeal from an order granting or denying a preliminary injunction. (See, e.g., *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 889 [125 Cal.Rptr. 915]; *Paul* v. *Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112, 121 [25 Cal.Rptr. 595].) Other courts have reviewed the merits in such cases without expressly determining whether they were authorized to do so. (See, e.g., *District Election etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261 [144 Cal.Rptr. 442]; *7978 Corporation* v. *Pitchess* (1974) 41 Cal. App.3d 42 [115 Cal.Rptr. 746].) An early California decision on the

---

*Male Living In The Home*
    "The net amount of the contribution made to meet his own living expenses, plus any additional contribution made to the family budget unit, is net income to the family budget unit. See Section 44-113.5."

point held: "It accords with the theory of our system, that the Supreme Court shall have the benefit of the judgment of the District Court at the final hearing below, and, *except in a clear case*, we ought not to anticipate the final judgment of the District Court by our action on appeal from the order granting the preliminary injunction." (*Patterson* v. *Board of Supervisors* (1875) 50 Cal. 344, 345; italics added.)

■ The present case is "clear," and thus a determination on the merits is appropriate, because no fact questions are presented. The issue of the validity of the challenged regulations is solely one of law, and this court is in as good a position to resolve the issue now as the trial court would be after determination of this appeal. In an identical procedural setting, the California Supreme Court recently held that a city ordinance precluding more than five unrelated persons from residing together violated California's constitutional right of privacy (art. I, § 1); the case had reached the court on appeal from an order granting a preliminary injunction compelling the appellants to comply with the ordinance. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436].) The court did not expressly state that a determination of the validity of the ordinance was within the scope of its review but, as here, a determination on the merits of the action was clearly appropriate because no fact questions were to be resolved. (Compare *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835, 844 [116 Cal.Rptr. 487] [review of merits on appeal from order granting preliminary injunction inappropriate because claim involved mixed questions of law and fact, involving possibility of conflicting inferences].) A determination of the validity of the challenged regulations is thus within the scope of review on this appeal, and will be the law of the case. (*City of L. A.* v. *L. A. Bldg. etc. Council* (1952) 109 Cal.App.2d 81, 84 [240 P.2d 16] [appeal from judgment making preliminary injunction permanent; prior review of merits on appeal from order granting preliminary injunction was law of the case].)

To participate in the AFDC program, a state must formulate a plan for aid and services which fulfils conditions specified by federal statute. (42 U.S.C. § 602.) One of these conditions is that the state plan must "provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children...." (42 U.S.C. § 602(a)(7).) ■ Federal regulation implementing this directive precludes a reduction in assistance payments (or a finding of ineligibility

for assistance) on the basis of availability of income unless there is proof of *actual* contribution: "In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered. . . ." (45 C.F.R. § 233.90(a)(1).)[4] This regulation embodies holdings in *Lewis* v. *Martin* (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282], and *King* v. *Smith, supra,* 392 U.S. 309. Thus a state may not reduce assistance payments on the basis of assumed availability of income from a UAM residing in a household receiving AFDC grants; there must be proof of actual contribution by the UAM to the child or relative claiming assistance under the AFDC program. (45 C.F.R. § 233.90(a)(1).)

The challenged regulations impermissibly operate to assume actual contribution by the UAM by reducing his declared contribution to the family unit to meet his own living expenses by an *assumed* amount of his own living expenses. Pursuant to EAS section 44-113.5, this assumed amount consists of (1) a set food allowance, (2) $5 for utilities and other household expenses, and (3) any increase in housing costs caused by the UAM's presence. EAS 44-133.7 provides for treatment of the reduced contribution ("the net amount of the contribution") as income to the family. However, the amount of living expenses presumed pursuant to EAS 44-113.5 may differ from the UAM's actual living costs (e.g., the UAM may spend more on food than the set food allowance). Federal law requires that these actual costs, rather than as-

---

[4]45 Code of Federal Regulations section 233.90(a) provides in pertinent part: "(a) *State plan requirements.* A State plan under title IV-A of the Social Security Act shall provide that:

"(1) The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State, nor may the State agency prorate or otherwise reduce the money amount for any need item included in the standard on the basis of assumed contributions from nonlegally responsible individuals living in the household.

"In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions; . . ."

sumed costs, be used in the computation of income made available to the AFDC family unit, because use of assumed costs in this computation, where exceeded by actual costs, results in an assumption of an amount of UAM contribution that may in actuality be lower or entirely absent. (45 C.F.R. § 233.90 (a)(1); see *Van Lare* v. *Hurley* (1975) 421 U.S. 338, 346 [44 L.Ed.2d 208, 215, 95 S.Ct. 1741]; *Lewis* v. *Martin, supra,* 397 U.S. 552, 559-560 [25 L.Ed.2d 561, 567]; *King* v. *Smith, supra,* 392 U.S. 309, 333-334 [20 L.Ed.2d 1118, 1134-1135].) Appellants argue that the challenged regulations are reasonable and realistic because computation of costs incurred by the UAM's presence in the AFDC household "is not something that can be done with mathematical precision," but federal decisional law and regulation reject the use of assumption to establish the availability of income.

Appellants rely on *Russell* v. *Carleson* (1973) 36 Cal.App.3d 334 [111 Cal.Rptr. 497], for the proposition that actual income to the AFDC family includes the benefits of lesser living costs resulting from the presence of the UAM in the household (e.g., contributions by the UAM to the cost of shared housing). The issue in *Russell* v. *Carleson* was whether Welfare and Institutions Code section 11351.5 (fn. 1, *ante*) and related regulations resulted in a denial of equal protection and due process; the court held that they did not. The court further added, in dictum, that the statute and regulations did not conflict with federal statutory law, because the benefits of shared living costs reduce the level of welfare need. (36 Cal.App.3d at pp. 344-345.) Subsequent to this decision, however, the California Supreme Court held that intangible economic benefits such as the savings derived from shared housing, as well as "noncash economic benefits" in general, do not constitute "income" justifying a reduction in assistance payments to AFDC recipients. (*Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 867-869 [115 Cal. Rptr. 1, 524 P.2d 97] [construing the term "income" in Welf. & Inst. Code, § 11450],[5] cert. den. 419 U.S. 1022 [42 L.Ed.2d 296, 95 S.Ct. 498].)

Appellants also rely on a statement in *Russell* v. *Carleson* that the challenged regulations do not conflict with federal law, but this state-

[5]Welfare and Institutions Code section 11450 provides in pertinent part: "(a) For each needy family which includes one or more needy children qualified for aid under this chapter, there shall be paid, notwithstanding minimum basic standards of adequate care established by the department under Section 11452, an amount of aid each month which when added to his income, exclusive of any amounts considered exempt as income or paid pursuant to subdivision (d) of this section or Section 11453.1, is equal to the sums specified in the following table,..."

ment was dictum rather than a considered judgment. For the same reason, *Russell* v. *Carleson* is not the basis for collateral estoppel in this case, assuming the named plaintiffs in the present case were members of the class in *Russell* v. *Carleson* (see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 231, at p. 3363).

Recognition of the invalidity of EAS section 44-113.5 and EAS section 44-133.7 does not, as appellants argue, require appellants to ignore actual receipt of income that reduces the needs of AFDC recipients. The challenged regulations are invalid only because, in violation of both federal and state law, they operate to *assume* reduction of need as a result of the presence of a UAM in the AFDC household and treat non-cash economic benefits as income.

The order granting the preliminary injunction is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 31, 1980.