Argued November 28, 1973, affirmed January 28, 1974

WALKER, *Petitioner, v.* JURAS, *Respondent.*

518 P2d 663

*Bruce D. Smith,* Medford, argued the cause and filed the brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Kathryn V. Kelty, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

This is an appeal from a fair hearing decision

of the Public Welfare Division in which it was held that petitioner's income tax refunds should be used to reduce his need for public assistance. Petitioner, unemployed, was receiving Aid to Dependent Children on behalf of his daughter.

Petitioner received income tax refunds and objected to the sums received being considered regular income for the purpose of determining the amount of his grant. Respondent-Division characterizes the refunds as income which should reduce the amount of welfare received. Petitioner, on the other hand, maintains that he should be allowed to keep the refunds in his reserve fund.[1]

Petitioner relies on a federal regulation, 45 CFR § 233.20, which states in pertinent part:

"(a) *Requirements for State Plans.* A State Plan * * * [for Aid to Dependent Children] must, as specified below:
"* * * * *
"(3) *Income and resources* * * *
"* * * * *
"(ii) Provide that, in establishing financial eligibility and the amount of the assistance payment: * * * (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered * * *.
"* * * * *"

Respondent concedes that this regulation controls. The issue is whether the phrase "* * * income * * * available for current use on a regular basis * * *" includes tax refunds which may be received only once a year.

---

[1] Welfare recipients are allowed to accumulate a reserve of not more than $1,000 under certain conditions.

It is clear that the refunds are income, but claimant contends that although they result from monthly accumulations, they are available only annually and thus "could not in any way be considered income received on a 'regular' basis."

Respondent asserts that refunds are available on a regular basis "—not weekly, monthly, quarterly but annually." Respondent further asserts that they are to be distinguished from the nonrecurring, lump-sum payments such as inheritances, insurance benefits, gifts and damages from personal injuries which are permitted to go into a cash reserve. Respondent points out that:

"* * * Inheritance does not arise out of the earnings of the beneficiary and their occurrence is beyond the beneficiaries' control. Insurance benefits are paid upon the happening of some event over which the recipient generally has no control. Gifts are not the result of the efforts of the * * * [one to receive the gift] and are beyond * * * [that one's] power to require * * * [that the gift be given him]. Personal injury damages are not sought, earned or a reward for effort; they are compensation of the individual for damages suffered and their purpose is to 'make the individual whole.'

"The element of lack of control by the recipient is also present in the retroactive lump sum social security awards dealt with in the unpublished opinion in *Carr v. Saucier* [Civil No. 16,704 (D NDGa, filed April 16, 1973)], cited by the petitioner.

"The common elements of lack of effort and control on the part of the recipient in these lump sum payments is lacking in the income tax refund. The refund is an annual payment of income earned and the wage earner has the ability to elect to receive a portion of his payment at the end of the tax period by varying the number of his claimed dependents. This power to control, to some degree, the existence

and amount of the amount paid in cash in the scheduled pay period and the amount paid at the end of the tax period supports the division's treatment of the refund as regular income. By decreasing the number of claimed dependents below actual dependents a wage earner may decrease his net receipts. By this means he may qualify for ADC for 11 months of a year and receive his refund, even though his actual income takes him above the qualified standards."

While there is language in the case cited by petitioner, *County of Alameda v. Carleson,* 5 Cal3d 730, 97 Cal Rptr 385, 488 P2d 953 (1971), *dismissed* (for want of a substantial federal question) 406 US 913 (1972), raising the question as to whether repayment of withheld taxes should be considered as income, the question was not resolved and in *Bradford v. Juras,* 331 F Supp 167 (D Or 1971), where the precise issue in the present case was not before the court, the court assumed that income tax refunds should reduce welfare payments and held that where overpayments resulted from failure to report receipt of income tax refunds, the state could recover overpayments from cash reserves and from income disregarded in computing need.

We conclude that respondent properly required petitioner's income tax refunds to be used to reduce petitioner's need for public assistance.[2]

---

[2] In determining net income any taxes withheld are not included. Thus, when petitioner's eligibility was determined during his periods of employment in 1972, all taxes withheld were deducted and, consequently, his net income was reduced for the determination of eligibility. To now claim, as does the petitioner, that the refund of these amounts withheld should not be considered in determining his current eligibility and the amount of assistance would create an anomalous situation: the withholding tax would, in effect, be deducted twice—first, when eligibility was determined in 1972 during the periods of employment and, again, in 1973 when the amount returned was excluded.

We have examined petitioner's claim that the hearing officer's decision was based on a policy which is arbitrary and irrational and deprives petitioner of his constitutional right to equal protection of the law and find this to be without merit.

Affirmed.