Filed 4/16/13  P. v. Sinha CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARVIND SINHA,<br><br>    Defendant and Appellant. | B236426<br><br>(Los Angeles County<br>Super. Ct. Nos. MA052094,<br>MA044995, MA050233) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Affirmed in part, reversed in part and remanded.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Arvind Sinha appeals his conviction following a jury trial of one count of inflicting corporal injury on his spouse (Pen. Code, § 273.5, subd. (a)),[1] and one count of attempting to dissuade a witness from giving testimony (§ 136.1, subd. (a)(2)). The trial court sentenced him to an aggregate term of four years in state prison.

We affirm in part, reverse in part and remand for resentencing.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  The Charges

Arvind[2] was charged in an amended information with two counts of first degree burglary (§ 459, counts 1 & 3), one count of inflicting corporal injury upon his spouse (§ 273.5, subd. (a), count 2), and one count of attempting to dissuade a witness from giving testimony (§ 136.1, subd. (a)(2), count 4). The information specially alleged that Arvind had committed each of the offenses while released from custody on bail in another case (§ 12022.1). Arvind pled not guilty and denied the special allegation.

### B.  The Prosecution's Case

#### i.  Count 2.

As of February 5, 2011, Kimberlie Sinha had been married to Arvind for 13 years and had two children with him. Kimberlie testified that in January and February, 2011 they were having relationship problems and would occasionally spend evenings apart. During that period, she was also having an affair.

On February 4, 2011, Arvind telephoned Kimberlie asking to pick up his car; he also asked whether they were splitting up because she was with someone else. She told him she did not want to talk about it and that he should just take his car and leave.

---

[1]  Unless otherwise stated, all further statutory references are to the Penal Code.

[2]  Because Arvind Sinha and his victim, Kimberlie Sinha, share a surname, we refer to them by their first names for clarity and convenience. (See *Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn.13.)

In the early morning of February 5, Kimberlie was at home sleeping in bed with her boyfriend, James Dormay. Kimberlie testified that her roommate, Monica Detzell, and Detzell's boyfriend, Tyler Pent, were also sleeping in the house. At approximately 2 a.m., Kimberlie awoke to the sound of someone knocking at her bedroom window. She then heard rattling at her front door as if someone was "trying to get in the house," and called 911. At that point, she heard a window break.

While Kimberlie was on the phone with the 911 operator, Arvind entered the house. Kimberlie testified that Arvind was upset because she was there with Domay. Arvind was yelling, and she was scared and crying. She testified that Domay "left really quickly." Arvind then came into her bedroom, where she was lying on her bed. He picked up a candle sitting on her dresser and threw it, striking her left pinky finger. Kimberlie testified that "it hurt," and there was a "little bruise" and swelling on that finger. The candle also struck the wall above her bed, leaving a dent there.

Deputy Sheriffs Jason Brandenburg and DeShaun Miles responded to the scene. Deputy Brandenburg testified that upon their arrival, Kimberlie, Detzell, and Pent exited the house, and Kimberlie said Arvind was still inside. The deputies then ordered Arvind out of the house. When Arvind exited the house, Kimberlie said, "That's him. That's who hit me."

Deputy Brandenburg interviewed Kimberlie at the scene. He observed that she was shaking and had tears in her eyes. During the interview, Kimberlie told him she and Arvind were married for 13 years and had been separated for the last two years. Earlier in the day, she had received a phone call from Arvind who wanted to come over, but she refused. That morning, Arvind entered the house and a confrontation ensued between Arvind and Domay in the hallway. She saw Arvind punch Domay several times in the face, and Domay ran out of the house. Arvind then followed her into her bedroom, where he threw a candle at her head, striking her left pinkie finger. He also hit her twice in the face.

3

Deputy Brandenburg took photographs of Kimberlie's hands, and observed that her left pinky was swollen and bruised. He also noticed that there was redness and slight swelling to the right side of her face. Kimberlie told him her hand hurt. He asked Kimberlie whether she wanted medical attention. She responded that she would go to the doctor at a later date.

Later that afternoon, Deputy Sheriff Diane Valadez interviewed Kimberlie at her home. In her interview, Kimberlie recounted the incident that had occurred earlier that morning and stated she had been injured by Arvind. Deputy Valadez observed that Kimberlie's left pinkie finger was swollen and bruised "a deep[] blue color."

At trial, Kimberlie testified that she loved Arvind and did not want to see him convicted. After the incident, she visited Arvind in jail several times. She testified that on three or four occasions, Arvind had requested that she come see him. Kimberlie further testified that she received "about thirty" phone calls from Arvind while he was in custody. During one phone call, which was played for the jury, Kimberlie discussed the incident with Arvind and told him he had broken her finger. According to Kimberlie, Arvind "was saying that I pressed charges and I did all these things, and I didn't." She continued, "I just told them [police] what happened."

Los Angeles County Sheriff's Detective India Inez investigated the case. At trial, she testified that she had received training to investigate domestic violence and had interviewed over several hundred domestic violence victims in the course of her work. In her professional experience, about 70 percent of victims minimized or recanted their initial reports to the deputies. She explained that victims frequently recanted statements of abuse due to fear, concern for children, financial dependency, or affection for the defendant.

### ii. Count 4.

On March 31, 2011, Deputy Sheriff Nathan Botten was working at the North County Correctional Facility (NCCF). On that day, he retrieved a two-page handwritten letter from Arvind's cell, which stated:

4

"They record us here 2 [sic] but the only chance I have of coming home is if you do testify. And do not be afraid of perjury, you have no record! Worst case a slap on the hand or a fine (which I would pay)[.] [T]heir [sic] are too many lies in the report, and you need to state that we never stopped living 2gether [sic]. In fact you would stay with me during the week, and I would stay with you on the weekends. (For commute purposes.) But this particular night you didn't think I was coming over, but I had consent to come over if I wanted 2 [sic]. You can also st8 [sic] you were intoxicated and you didn't know you were signing a complaint against me."

Deputy Botten found the letter to be suspicious because the words were written in large print on every other line. He explained that because inmates had to purchase their own paper, they usually wrote in small print to save paper. He also found the wording of the letter to be suspicious. After reading the letter, he contacted the Palmdale Sheriff's station.

The prosecution's theory at trial was that Arvind intended to influence Kimberlie's testimony either by mailing the letter or by showing it to her while she visited him at the jail. Deputy Botten testified that NCCF policy allowed inmates to send letters from the jail, but that deputies reviewed or inspected all outgoing mail. No envelope accompanying the letter was found in Arvind's cell. Deputy Botten testified that inmates were also permitted to have a deputy pass a letter to their visitors in the visiting area. In the jail's visiting room, inmates were separated from visitors by a glass barrier and spoke with them by telephone. On several occasions, Deputy Botten had seen visitors hold letters or documents up to the glass partition for inmates to view. If an inmate wanted to hold a document up against the glass, he could do so without having the deputy review it.

Kimberlie testified that she had never seen the two-page letter prior to trial.

## C. The Defense Case

At trial, the defense called Deputy Miles who had responded to the scene. He testified that he did not see any injuries to Kimberlie's face. He specifically testified that the only injuries he observed were on "her left hand, close to her pinkie."

Arvind did not testify at trial or present any other evidence in his defense.

At the close of evidence, the defense made a motion to dismiss under section 1118.1; the trial court denied the motion.

## D. Verdict and Sentencing

The jury found Arvind guilty of one count of corporal injury to a spouse and one count of dissuading a witness from testifying. In a bifurcated proceeding, the court found true the allegation that Arvind had committed those offenses while on bail (§ 12022.1). The court sentenced Arvind to four years in state prison, consisting of a low term of two years on count two and a consecutive term of two years on count four. The court struck the on-bail enhancement pursuant to section 1385. Arvind received presentence custody credit of 240 days (160 actual days and 80 days of conduct credit). The court ordered him to pay two $40 court security fees, two $30 criminal conviction assessments and a $400 restitution fine. A parole revocation fine was imposed and suspended pursuant to section 1202.45.

Arvind timely appealed.

## DISCUSSION

### I. The People Concede the Conviction for Dissuading a Witness Must Be Reversed

In this case, Arvind was convicted of attempting to dissuade a witness from testifying, in violation of section 136.1, subdivision (a)(2), in count 4. This count was based on the letter found in his jail cell on March 31, 2011. The letter stated to its intended reader (whom the jury could reasonably infer to have been Kimberlie): "[T]he only chance I have of coming home is if you do testify." The letter then suggested the false testimony Kimberlie should give. It said nothing about her avoiding testifying. The People concede, and we agree that the evidence was insufficient to support the conviction of count 4 because the letter reflects Arvind's intent to induce false testimony, not to dissuade giving testimony. Other than this letter, there is no other evidence of Arvind's

6

intent. Accordingly, the offense of dissuading a witness from testifying charged in count 4 was not proved, and the conviction on that count cannot stand.[3]

## II. Sufficiency of the Evidence of Corporal Injury Upon a Spouse

Arvind contends the evidence was insufficient to support his conviction on count 2 because there was no credible evidence that Kimberlie's injuries resulted in a traumatic injury or that he willfully inflicted any injury upon Kimberlie.

### a. Standard of Review

In reviewing the sufficiency of the evidence to support a criminal conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict-i.e., evidence that is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonable have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

---

[3] Because we reverse Arvind's witness dissuasion conviction for insufficient evidence, we need not address his remaining challenges to the conviction.

### b. Traumatic injury.

Section 273.5, subdivision (a) states, "Any person who willfully inflicts upon a person who is his or her spouse…corporal injury resulting in a traumatic condition is guilty of a felony…." Subdivision (c) of section 273.5 defines a "traumatic condition" as "a condition of the body, such as a wound, or external or internal injury, [including, but not limited to, injury as a result of suffocation,] whether of a minor or serious nature, caused by a physical force." Courts have further defined a traumatic condition as "a wound or other abnormal bodily condition resulting from the application of some external force" (*People v. Stewart* (1961) 188 Cal.App.2d 88, 91) and "'an abnormal condition of the living body produced by violence'" (*People v. Cameron* (1975) 53 Cal.App.3d 786, 797.) A high degree of physical harm is not required. (*See People v. Abrego* (1993) 21 Cal.App.4th 133, 137.) By extending culpability to situations involving minor injury, "'the Legislature has clothed persons…in intimate relationships with greater protection by requiring less harm to be inflicted before the offense is committed.'" (*Ibid.*) In many cases, the physical manifestation of a traumatic condition is satisfied by the victim's bruises (e.g., *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085-1086) or redness (e.g., *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771) that result from the defendant's physical force.

In support of his position, Arvind relies upon *People v. Abrego* (1993) 21 Cal.App.4th 133. There, the defendant "slapped or punched" the victim five times in the face and head. (*Id.* at p. 135.) At trial, the victim testified that she had not been injured or bruised, she felt no pain from the blows, and she did not seek medical aid. (*Ibid.*) Although the victim told the police officer who responded to the scene that she felt pain and tenderness where she had been struck, the officer did not observe any injuries. (*Ibid.*) The court held that the evidence was insufficient to support the defendant's conviction under section 273.5, reasoning that the soreness and tenderness the victim had experienced were not sufficient to constitute a traumatic condition. (*Id.* at p. 138.)

*Abrego* does not assist Arvind; in *Abrego* there was no evidence of any trauma to the body, minor or otherwise. Here, in contrast, the evidence established that Kimberlie

8

had visible, external injuries on her face and finger caused by physical force. At trial, she testified that Arvind had thrown a candle at her finger, causing a "little bruise" and swelling on her left pinkie finger. Deputy Brandenburg, who responded to the scene and spoke with Kimberlie, testified that she told him Arvind had thrown a candle at her head and hit her twice in the face. Shortly after the incident, he observed that Kimberlie's left pinkie finger was swollen and bruised, and took photographs of these injuries. He also observed that there was redness and slight swelling to the right side of her face. Officer Valadez testified that, later that afternoon, she saw Kimberlie and noticed that "her left hand around her pinkie finger was very bruised and swollen all the way down to the palm." All of this constituted substantial evidence of a "traumatic condition" within the meaning of section 273.5, subdivision (c).

### c. Willful infliction.

To find a defendant guilty of violating section 273.5, subdivision (a), the prosecution must prove willful infliction of bodily injury resulting in a traumatic condition. (§ 273.5, subd. (a).) As section 273.5, subdivision (a) is a general intent crime, a defendant may be found guilty if he willfully used force, even if he had no specific intention of causing the traumatic injury. (*People v. Campbell* (1999) 76 Cal.App.4th 305, 308.) In this context, "willful" means simply a "'purpose or willingness to commit the act.'" (*Ibid.*; *People v. Lara* (1996) 44 Cal.App.4th 102, 107.)

Here, there was sufficient evidence supporting a reasonable finding that Kimberlie's injuries resulted from a direct application of force by Arvind. Deputy Brandenburg testified that Kimberlie told him Arvind had thrown the candle at her head and hit her in the face twice. (*See People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["the testimony of a single witness is sufficient for the proof of any fact"]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) We see nothing physically impossible or inherently improbable in Deputy Brandenburg's testimony. Furthermore, Kimberlie's testimony at trial partly

9

corroborated the officer's testimony. She testified that Arvind had thrown the candle at her finger.

Arvind asserts that he intended to throw the candle at the wall, and any injury that Kimberlie suffered "was the accidental and improbable result of the candle happening to make contact with her after it bounced off of the wall." This is merely an argument for a different interpretation of the evidence, an argument which misperceives our standard of review. (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955 ["It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact"].) Accordingly, we conclude that substantial evidence supports Arvind's conviction under section 273.5.

## DISPOSITION

The conviction of dissuading a witness under section 136.1, subdivision (a)(2) (count 4) is reversed. The sentence is vacated and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.


ZELON, J.


We concur:


WOODS, Acting P. J.


JACKSON, J.


10